**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**RONDIGO, L.L.C.,**
**a Michigan limited liability company,**
**DELORES MICHAELS and**
**RONALD MICHAELS,**

      **Plaintiffs,**

**vs**                            **Case No: 05-74775**
                                    **Honorable Victoria A. Roberts**

**CASCO TOWNSHIP, MICHIGAN,**
**a Michigan municipal corporation,**

      **Defendant.**
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

      Before the Court is Defendant's Motion for Summary Judgment.  The Court

**GRANTS** the motion.

**II.    BACKGROUND**

      The controversy arises from the attempt of Delores Michaels ("Michaels") to

construct a composting facility through Rondigo L.L.C. ("Rondigo") (collectively

"Plaintiffs") within the borders of Casco Township ("Township").  Plaintiffs claim

violations of their due process, equal protection, and First Amendment rights under 42

U.S.C. § 1983.  Although Plaintiffs initially pled fraudulent misrepresentation, negligent

misrepresentation, and silent fraud, they do not address them in their response.  The

1

Court presumes them waived. A close review of the facts is helpful to the resolution of Plaintiffs' remaining claims under 42 U.S.C. § 1983.

The Township first adopted standards for commercial composting on December 17, 1990 as part of the Township Zoning Ordinance ("Ordinance"). The standards came about immediately after the beginning of Indian Summer, the Township's first commercial composting operation. Section 10.03K of the ordinance specifically permitted composting as a special land use. In addition, the Township adopted requirements, standards, procedures, and supporting materials required for the application, review, and approval of special land use requests. It also adopted standards for the approval of site plans.

On April 28, 2003, Rondigo purchased a 42 acre property, located at 5816 Bethuy Road ("Bethuy Property") within the Township. Michaels was aware of the special land use requirement for commercial composting when she purchased the property. After purchase of the Bethuy Property, but before applying for special land use approval for composting, Plaintiffs retained an engineering firm to prepare a site plan and submitted an application to the Road Commission to construct driveway entrances and discharge storm water from a proposed detention pond.

On December 1, 2003, Plaintiffs' engineering firm submitted a special land use and site plan application to the Township. Pursuant to § 15.05 of the Ordinance, the Township held the required public hearing on December 16, 2003. At the hearing, the Township Planning Commission ("Commission") heard Michaels' proposal, and then moved to have a subsequent public hearing on January 20, 2004.

Before the January 20th hearing, the Commission's planning consultant reviewed

the special land use and site plan applications.  The consultant concluded he could not

recommend approval of the site plan or special use requests because "application

information [was] missing and there [were] a number of issues . . . that need[ed] to be

addressed before additional consideration [could] be given . . . to th[e] [a]pplication[s]."

Defendant's Motion for Summary Judgment, Ex. 13 at 1.

At the January 20, 2004 hearing, many community members expressed

opposition to Plaintiffs' proposed composting operation.  In response, Michaels

presented a document outlining how she planned to address the issues raised by the

Commissions' planning consultant's review.  Also at the hearing, the Commission:

> (1) noted approvals from the gas company and County Drain Commission were necessary, as well as a study by the Road Commission;

> (2) approved use of an independent drainage and compost engineer to review the applications; and

> (3) tabled the special land use application and site plan until completion of a review by an independent engineer.

> The following events occurred after the public hearing:

> (1) December 26, 2003: Plaintiffs submitted engineering site plans to the Drain Commission;

> (2) February 2, 2004: Plaintiffs' engineering firm submitted revised construction plans to the Township and requested consideration of the revised plan at the February 2004 Township meeting;

> (3) February 3, 2004: the Road Commission requested additional information from Plaintiffs;

> (4) February 6, 2004: the Drain Commission determined that because of "a number of concerns," the plans "[could] not be approved . . . ."  Mot. Summ. J., Ex. 18.  The commission noted 26 issues that would need to be addressed before approval; and

> (5) February 11, 2004: the Township's planning consultant reviewed the revised

special land use and site plan proposals, but determined it could not recommend approval of the site.

On February 17, 2004, the Commission held a regularly scheduled meeting. The Commission's planning consultant stated that he could not recommend approval of Plaintiffs' applications because of their continuing shortcomings. He also noted that the Commission could not otherwise approve the applications until it received reviews from the Drain Commission, Road Commission, and the independent composting engineer hired by the Commission. Plaintiffs' engineer stated he was working to address the listed shortcomings of Plaintiffs' site plan. After this hearing, the following events occurred:

> (1) February 19, 2004: the Road Commission sent Plaintiffs correspondence stating it would require information and plans for three additional improvements to the road before it could approve issuance of a permit;

> (2) March 7, 2004: the Commission's hired composting expert sent his review of the composting plan to the Commission. The review recommended denial of the applications; and

> (3) April 16, 2004: the Township received correspondence from Michaels' attorney requesting the Commission table consideration of her applications. However, the correspondence requested consideration of the applications at the Commission meeting in September 2004. The reason for this letter was that Michaels' mother was dying and she had to take care of her. It also noted Michaels was actively considering alternative sites.

In June of 2004, almost three months before the date Plaintiffs requested the Commission again review their applications, the Commission began the process of amending the Ordinance's commercial composting standards. The Commission reviewed drafts of the proposed amendment of the composting standards on August 17, September 21, and October 19 of 2004. In amending the composting standards, the agents of the Township relied heavily on Plaintiffs' site plan and the materials submitted

4

in its support.

As required by the now repealed Township Zoning Act ("TZA"), M.C.L. § 125.286b (repealed 2006), on September 29, and October 13, 2004, notice was made by publication in the The Bay Voice for an October 19, 2004 hearing on the proposed amendment of the Ordinance's composting standards. After the hearing and proper notice, the amended Ordinance became effective on December 22, 2004.

Earlier that month, on December 1, 2004, Plaintiffs' engineer, Mr. Robert Rynk ("Rynk"), responded to an email from Michaels regarding the Commission's composting expert's denial of approval. Rynk stated he felt the denial, and the request for additional detail, were reasonable:

> I have reviewed [the composting expert's] review of the proposed . . . composting facility . . . . At this point I would not consider it a negative review. Primarily [the expert] is recommending that you provide [the Township] with more details about the site and how you plan to operate it and market the product. This does not seem unreasonable to me. . . . Most of the details he is asking for are reasonable. If I were in the Township's Board's collective shoes, I would not accept your composting experience as proof things will go smoothly.

Def.'s Mot. Summ. J. at 10, Ex. 33.

On January 14, 2005, the Township sent Rynk the amended composting Ordinance requirements. Subsequently, on June 6, 2005, Plaintiffs sent the Township correspondence stating it would not be able to submit revised plans for the June 2005 Commission meeting. The stated reason was the inability to complete the necessary wetlands delineation work.

On April 1, 2005, the Circuit Court for the County of St. Clair, entered a consent order resolving the Township's motion for a temporary restraining order against Rondigo

for allegedly beginning composting construction without Township approval. Later during April 2005, the Township began the process of re-zoning an area of land in the Southwestern corner of the Township from an industrial classification to general business. This re-zoning was consistent with the Township's master zoning plan. The Township published notice for an April 19, 2005 hearing on the proposed re-zoning in the The Voice on March 30, and April 13, 2005. The Township also submitted the notice and a mailing list, supporting effective notice of the hearing to property owners within 300 feet of the zoning change by direct mail on March 11.

Unlike the amendment of the re-zoning Ordinance, the TZA required notice by mail for changes to zoning classifications. Rondigo and Michael Desjardine's ("Desjardine") (owner of the affected Blue Star property later purchased by Plaintiffs) mailing addresses (the same addresses to which tax statements were mailed) are listed. However, Michaels testified that she did not know if she received notice, and Fred Thompson ("Thompson"), owner of the nearby competing Indian Summer composting operation, testified that to the best of his knowledge he did not receive notice of the hearing on re-zoning. However, Plaintiffs do not establish that Thompson's property was within 300 feet of the zoned property and entitled to notice by mail. After the public hearing and publication, the area was re-zoned effective June 22, 2005.

On July 13, 2005, Plaintiffs submitted revised special land use and site applications, subject to the requirements of the amended composting standards. A few days later, Plaintiffs also submitted an operations manual to supplement their special land use and site plan applications. The Commission's planning consultant completed

his review of the revised plans on August 16, 2005.  He noted ongoing deficiencies in the applications.  The same day Plaintiffs submitted a revised construction plan to the Drain Commission.

On September 19, 2005, the Drain Commission completed its review of the revised construction plans and gave 24 comments it determined needed to be addressed before it could grant approval.  The same day the Township's composting expert completed a review of the revised site plans.  He recommended denial, but suggested additional changes to meet the noted shortcomings.  The recommended changes focused on measures to ensure low odor.  These events followed:

(1) September 20, 2005: the Commission held a hearing on Plaintiffs' revised plans;

(2) October 4, 2005: the Township attorney notified Plaintiffs' attorney advising that a parcel adjoining the parcel that Plaintiffs were considering purchasing was subject to a permanent injunction;

(3) October 5, 2005: Plaintiffs' consultant completed a wetland assessment report of the property for which Plaintiffs sought special land use approval;

(4) October 6, 2005: Plaintiffs' attorney wrote to the Commission regarding its planning consultants' August 16, 2005 and its composting expert's September 19, 2005 review of the site plans.  Plaintiffs' attorney said Rondigo was "not asking for approval of its application at [that] time.  It simply want[ed] to update the Commissioner of the status of its application."  Mot. Summ. J. at 14, Ex;

(5) October 12, 2005: the Zoning Board of Appeals denied Plaintiffs request for a variance from the newly amended composting standards.  Plaintiffs note a member of the Commission wrote a letter supporting denial of the variance;

(6) November 8, 2005: the Commission's planning consultant issued an unfavorable review of Plaintiffs' newest revised site plan;

(7) November 15, 2005: the Commission tabled Plaintiffs' application until Plaintiffs requested it to consider their; and

(8) December 16, 2005: Plaintiffs filed suit.

## III. ANALYSIS

Before addressing Plaintiffs' claims, the Court notes that Plaintiffs' argument is often imprecisely articulated. Such imprecision weakens the argument, and also requires the Court to construct -- and guess -- what Plaintiffs are saying. The Court strongly encourages counsel for both parties to speak with clarity in pursuing their clients' interests.

### A. Substantive Due Process

To state a substantive due process claim a plaintiff must establish that:

(1) a constitutionally protected property or liberty interest exists, and

(2) that interest has been deprived through arbitrary and capricious action.

*J-II Enters., L.L.C. v. Bd. of Comm'rs*, No. 04-3516, 135 Fed. Appx. 804, 807-808 (6th Cir. May, 18, 2005) (unpublished); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

"[P]roperty interests are not created by the Constitution itself, but rather by 'existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *Leis v. Flynt*, 439 U.S. 438, 441 (1979). To establish a vested interest, Plaintiffs must show that the Township did not have discretion to deny the application it argues created a property or liberty interest. *Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627,

641-642 (6th Cir. 2001) *rev'd on other grounds*, 538 U.S. 188 (2003); *Silver*, 966 F.2d at 1036; *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 201-204 (6th Cir. 1995); *Glenn v. Clement Twp.*, No. 05-10093, 2006 U.S. Dist. LEXIS 51461, at *38 (E.D. Mich. July 27, 2006); *Hillside Prods. v. Duchane*, 249 F. Supp. 2d 880, 893 (E.D. Mich. 2003). In other words, if Defendant had discretion to deny Plaintiffs' application or request, even if Plaintiffs complied with the minimum mandatory requirements, Plaintiffs would have neither a "legitimate claim of entitlement" nor a "justifiable expectation" in the approval of their request. *See Triomphe*, 49 F.3d at 201-204; *J.D. P'ship v. Berlin Twp. Bd. of Trs.*, 412 F. Supp. 2d 772, 780 (S.D. Ohio 2005); *see also Tri-Corp Mgmt. Co. v. Praznik*, No. 00-4326, 33 Fed. Appx. 742, 748 (6th Cir. Mar. 29, 2002) (unpublished).

### i)     <u>Special Land Use</u>

Examination of the version of the Zoning Ordinance in effect at the time of Plaintiffs' special land use application reveals that approval of special land use applications was not discretionary. Section 15.07 of the Ordinance states that "[i]f the facts in the case establish that the findings and standards set forth in this Ordinance apply to the proposed use, and have been met, the Planning Commission *shall grant* special approval." § 15.07 (emphasis added). The findings and standards are listed in § 15.06, and require that special land use will be:

> (1) in accordance with the general objectives, intent, and purposes of [the Ordinance];
>
> (2) served adequately by essential public facilities and services such as highways, streets, police, and fire protection, drainage structures, refuse disposal, or that persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such service;

9

(3) compatible with adjacent uses of land and the natural environment; and

(4) consistent with maintenance of the public health, safety, and welfare.

§ 15.06.

Although § 15.07 mandates approval if the § 15.06 requirements are met, § 15.07 also states that "[in] granting a special approval use permit, the Planning Commission shall impose such *reasonable conditions* of use as is proven necessary to protect the best interest of [Defendant] and the surrounding property." (emphasis added). § 15.07. So, while the Township was obligated to approve Plaintiffs' special land use request if they met the requirements of § 15.06, it was also entitled to impose "reasonable conditions" on this special land use. These "reasonable conditions" must be:

(1) designed to protect natural resources, the health, safety, and welfare, and the social and economic well being of those who will use the land use or activity under consideration, residents and landowners immediately adjacent to the proposed land use or activity, and the community as a whole;

(2) related to the valid exercise of the police power, and purposes which are affected by the proposed use or activity; and

(3) necessary to meet the intent and purpose of the zoning ordinance, be related to the standards established in the ordinance for the land use or activity under consideration, and be necessary to insure compliance with those standards.

§ 15.07.

Finally, § 15.08 of Article VX titled "Approval, Grant of Permit," states that "[u]pon holding a public hearing and finding that the Article's, requirements have been satisfactorily met by the applicant, *the Planning Commission shall within (30) thirty days grant special approval.*" § 15.08 (emphasis added). This approval was not discretionary

if Plaintiffs complied with certain mandatory and minimum requirements. *Triomphe*, 49 F.3d at 201-203; *Berlin*, 412 F. Supp. 2d at 780; *see also Glenn*, 2006 U.S. Dist. LEXIS 51461, at *37-39.

Plaintiffs satisfy the first element of their substantive due process claim, but must also prove that "the governmental actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense" as to this interest. *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453 (6th Cir. 2002); *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Buckeye*, 263 F.3d at 641*; see also Richardson* v. *Twp. of Brady* 218 F.3d 508, 512-513 (6th Cir. 2000).

Since the Township has not denied Plaintiffs' special land use request, Plaintiffs' arbitrary and capricious argument is based on the manner in which the Township required revisions to the special land use application. A reasonable jury could not find the Township's requests for revisions were arbitrary, capricious, or an intentional attempt to injure the Plaintiffs. The Township explained the reasons for the requests for the revisions on the record; those reasons were based on general notions of health, safety, and community welfare. *See Glenn*, 2006 U.S. Dist. LEXIS 51461, at *38-40. Moreover, as of at least January 14, 2005, Plaintiffs' own composting engineer informed Michaels that the requests for additional specificity in their plans were reasonable, and that he would not have accepted Michaels' representations as sufficient to approve the applications. As of April 20, 2005, Plaintiffs' composting engineer was still "fabricat[ing]" the details of the proposed composting operation in his draft operations manual. Def.'s Mot. Summ. J. at 11, Ex. 36. From this date forward, a reasonable jury could not find

the additional requests made by the Township were arbitrary and capricious.

### ii) <u>Composting Standards</u>

Special land use approval under Article VX of the Ordinance, and § 10.03 of the Ordinance, which lists the requirements for "Yard Waste Composting Facilities," are distinct requirements of the Ordinance. Def.'s Mot. Summ. J., Ex. 57 ¶ 10. As stated in the pre-amended version of the composting standards, under § 10.03 "those that manage the biological decomposition of organic matter under controlled aerobic conditions, *may be permitted* in Industrial districts only, subject to the issuance of a Special Land Use Permit *and compliance with*" the additional conditions and standards listed within § 10.03. Section 10.03 is not mandatory. It states only that Defendant "may" permit composting. Unlike approval for special land use, the grant of permission to actually conduct composting, is entirely within the discretion of Defendant. *See Triomphe*, 49 F.3d at 201-203; *Glenn*, 2006 U.S. Dist. LEXIS 51461, at *37-39. Thus, Plaintiffs had no vested interest in the ultimate approval of its composting operation, nor in the application of the pre-amendment composting standards in effect when it first applied to the Commission.

### iii) <u>Re-Zoning of Blue Star Property</u>

As established by the Township, Plaintiffs did not purchase the Blue Star property until after it was re-zoned. More importantly, Plaintiffs cite nothing supporting a vested interest in an existing zoning ordinance. Indeed, under Michigan law, absent certain exceptions not relevant here, this interest only vests when a building permit has been issued to the owner of the property before the re-zoning, and substantial work has

12

been done in reliance.  *See Lansing v. Dawley*, 225 N.W. 500, 500-501 (Mich. 1929);

*Schubiner v. W. Bloomfield Twp.*, 351 N.W.2d 214, 217 (Mich. Ct. App. 1984); *see also*

*Braun v. Ann Arbor Charter Twp.*, No. 07-1370, 2008 U.S. App. LEXIS 5344 (6th Cir.

Mar. 13, 2008) (emphasis added) (citing *Nasierowski Bros. Inv. Co. v. Sterling Heights*,

949 F.2d 890, 896 (6th Cir. 1991)) (holding that under certain circumstances when a

Township makes affirmative representations "*[a] property owner* arguably has a

property right where the government rezones an existing property" even without

issuance of a permit.) (emphasis added); *Buckeye*, 263 F.3d at 641-643 (finding a

property interest where the zoning permit complied with existing zoning regulations and

*the site plan had already been approved*).

**B.    Procedural Due Process**

In the Sixth Circuit, a plaintiff states a § 1983 procedural due process claim

through one of two methods:

> (1) Demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or

> (2) Proving that the defendant deprived him of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss.

*Tri-Corp*, 33 Fed. Appx. at 746; *Hearns Concrete Constr. Co. v. City of Ypsilanti*, 241 F.

Supp. 2d 803, 810-811 (E.D. Mich. 2003) (citing *Macene v. MJW, Inc.*, 951 F.2d 700,

706 (6th Cir. 1991)).  Plaintiffs' procedural due process claim is ripe for adjudication.

*See J-II Enters. v. Bd. of Comm'rs*, No. 04-3516, 135 Fed. Appx. 804, 807-808 (6th Cir.

May 18, 2005) (unpublished).

Under the first approach, Plaintiffs must establish that the fundamental elements

of procedural due process -- notice and an opportunity to be heard -- were absent from the process itself. *See Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992). Plaintiffs say they were denied due process in relation to the 2004 amendment of the Township's composting standards, and the 2005 re-zoning of the land owned by Dejardines that Plaintiffs ultimately purchased.

Plaintiffs do not articulate or cite law supporting the existence of any type of vested interest they were deprived of. As addressed above, Plaintiffs had a vested property interest in their special land use application. However, Plaintiffs did not have a vested property interest in the Ordinance's composting standards, or in the zoning of an adjacent property it did not own. Plaintiffs do not state a claim under the latter approach on any issue. Accordingly, they do not articulate a procedural due process violation in relation to their special land use application.

Even assuming Plaintiffs had a vested interest, they cannot argue that notice and an opportunity to be heard were absent from the proceedings related to the amendment of the composting standards. Defendant provides evidence establishing notice by publication in The Bay Voice. Plaintiffs previously asserted notice by mail was required by statute, which is incorrect. After the hearing, the Township again complied with the statutory requirements for adoption through notice by publication. When the Township complied with the required statutory notice by publication, they satisfied Plaintiffs' due process rights. Accordingly, this claim fails. *See Bauss v. Plymouth Twp.*, No. 05-2277, 233 Fed. Appx. 490, 498-499 (6th Cir. May, 17, 2007) (unpublished); *see also* Douglas A. Jorden & Michele A. Hentrich, *Public Participation Is on the Rise*: *A Review of the Changes in the Notice and Hearing Requirements for the Adoption and Amendment of*

14

*General Plans and Rezonings Nationwide and in Recent Arizona Land Use Legislation,*
43 NAT. RESOURCES J. 865, 871-72 (2003) (citing EDWARD H. ZIEGLER, JR.,
RATHKOPF'S THE LAW OF ZONING AND PLANNING § 1:4 (2003)).

Plaintiffs also contest proper notice for the re-zoning of the area including the
Blue Star property. The Township submitted documents supporting proper notice by
publication of the public hearing on the re-zoning, by way of a copy of its letter of
personal notice and a mailing list of the addresses of those owning property within 300
feet of the affected property. Def.'s Rep., Ex. 1, Def.'s Mot. Summ. J., Ex. 32.
Defendant also supplies its notice by publication for the adoption of the re-zoning.

Michaels, to whom delivery of notice by mail was statutorily required as an owner
within 300 feet of the affected property, testified at her deposition:

Q: Now, you indicated the [T]ownship rezoned the property?

A: I found that out.

Q: And how did you find out that it was rezoned.

A: I'm not quite sure how I found out.

Q: Was it rezoned after you bought the property, or after?

A: I'm not exactly sure how that happened because Mr. Desjardines never knew
when it was rezoned. He had never been notified about anything about the
rezoning.

Delores Michaels Deposition Transcript at 133.

Michaels' inability to remember how she became aware of the re-zoning or her
assertion that Desjardines also did not know about the re-zoning is not sufficient to
support the reasonable inference that she *did not* receive notice. Michaels does not
state she did not receive notice, but instead says she did not know *how she found out*

about the re-zoning.  These two points are distinct.

Even assuming *arguendo* that there was insufficient notice of the re-zoning, Plaintiffs were not owners of the affected property at the time the zoning became effective.  As a result, they had no vested property interest in the Blue Star property's zoning status.  Even the most liberal construction of vested zoning rights available to Plaintiffs require that *they be property owners* at the time of the zoning change in order to have a vested interest in a zoning scheme.  *See Braun*, 2008 U.S. App. LEXIS 5344, at *21-22 (citing *Nasierowski Bros. Inv. Co. v. Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991)) ("A *property owner* arguably has a property right where the government re-zones an existing property.") (emphasis added); *Buckeye*, 263 F.3d at 642; *see also JGA Dev., LLC v. Charter Twp. of Fenton*, 2006 U.S. Dist. LEXIS 9282, at *21-22 (E.D. Mich. Mar. 9, 2006) (citing *Schubiner*, 351 N.W.2d 214)) ("[T]o obtain vested property rights in a zoning classification, the owner must have obtained a building permit and begun construction.").

Defendant provided evidence which supports a finding that Plaintiffs acquired the property after the re-zoning became effective.  Plaintiffs' procedural due process right could not be violated because they had no vested interest in the zoning of the Blue Star property before they acquired it.

In summary, Plaintiffs' claim under 42 U.S.C. § 1983 for a violation of due process is without merit.

**C.**     **Equal Protection**

Defendant first argues the Court does not have jurisdiction to consider Plaintiffs'

claim because it is not ripe; there has been no final decision on Plaintiffs' special land

use request or site plan proposal.  This argument is imprecise for two reasons: (1) it

fails to distinguish between a facial and as-applied challenge; and (2) it blends Plaintiffs'

distinct applications into one.  As-applied challenges do not need to meet the finality

requirements articulated in *Williamson County Regional Planning Com. v. Hamilton*

*Bank*, 473 U.S. 172, 186 (1985), and are instantly ripe for adjudication.  *County*

*Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).  Further, "finality"

does not necessarily rest on the exhaustion of administrative remedies.  Defendant's

own expert, Paul LeBlanc, sets forth three separate requirements that must be met

before an entity can engage in commercial composting.  These requirements are:

> (1) Special approval for the use, per the procedures and standards of Article XV;

> (2) Compliance with the specific requirements of § 10.03K for Yard Waste
> Composting Facilities;

> (3) Site plan approval, per § 13.14.

Def.'s Mot. Summ. J., Ex. 57 ¶ 10.  A decision satisfies the finality requirements of an

equal protection claim when there has been a final determination or further action is

otherwise futile.  *Seguin v. Sterling Heights*, 968 F.2d 584, 589 (6th Cir. 1992); *Bannum,*

*Inc. v. Louisville*, 958 F.2d 1354, 1362-1363 (6th Cir. 1992).  Thus, the Court must

examine whether each of these applications received a final determination or became

futile.

To make an equal protection claim in the land use context, Plaintiffs must identify

a fundamental right or suspect class, or alternatively, demonstrate a governmental

action that is not rationally related to legitimate governmental objectives.  *Sprint*

*Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1003 (7th Cir. 2004). Although less than clear, Plaintiffs appear to offer the following constructions of their equal protection claim:

(1) a facial challenge based on arbitrary and capricious action;

(2) an as applied challenge to the zoning amendment based on disparate treatment based on gender; and

(3) an as applied challenge to the zoning amendment based on arbitrary and capricious disparate treatment between similarly situated businesses.

### i) <u>Facial Challenge</u>

The Plaintiffs must demonstrate that the Township's actions in relation to similarly situated properties were irrational, and/or were arbitrary and capricious, and not related to legitimate governmental objectives. *Sprint*, 361 F.3d at 1002. "The essence of this claim is that the mere enactment of the Ordinance [or another act] violates the Equal Protection Clause because it arbitrarily treats appellants differently than other similarly situated property owners." *Concrete*, 442 F.3d at 167. Equal protection claims can be brought by a "class of one" where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under *Olech*, a "class of one" plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: (1) "[negate] every conceivable basis which might support" the government action; or (2) demonstrate that the challenged government action was motivated by animus or ill-will. *Klimik v. Kent County Sheriff's Dep't*, No. 02-1774, 91 Fed. Appx. 396, 400 (6th Cir. Jan. 30, 2004) (unpublished) (quoting *Bower v. Vill. of Mount Sterling*, 44 Fed. Appx. 670, 677 (6th Cir.

2002)).

Plaintiffs' best possible construction of a facial argument is in relation to the amendment of the § 10.03 composting standards. Although it concedes Plaintiffs' application brought its attention to its Ordinance's outdated composting standards, Defendant explained the reason for the amendment was to update an ordinance that had been in place since the initial adoption of standards in 1990. This decision was on the record, and based on general notions of health, safety, and community welfare. *See Glenn*, 2006 U.S. Dist. LEXIS 51461, at *38-40. This amendment passes rational basis scrutiny.

In addition, Plaintiffs' clearly cannot mount a facial challenge to the promulgation of the special land use or site plan approval requirements, since they were made long before Plaintiffs purchased the properties at issue. Although it is not clear whether Plaintiffs make an equal protection argument based on the re-zoning of the Blue Star property, the Court also holds this re-zoning was rationally related to the furtherance of Defendant's master zoning plan.

Plaintiffs' facial challenge is without merit. There is no genuine issue of material fact; Defendant had a rational basis for the contested actions.

### ii)     As Applied There is No Gender Discrimination

"Where a plaintiff challenges a zoning regulation 'as applied,' as opposed to making a facial challenge to the regulation, the courts have held that the *Williamson* final decision requirement must be met." *Seguin*, 968 F.2d at 588. To meet these

19

requirements, Plaintiffs must show that there has been a final decision with regard to the application of the regulation to the landowner's property. *Id.* at 588-589. Plaintiffs can successfully do so as to their request for a variance from the amended composting standards incorporated into the Zoning Ordinance. Plaintiffs' request for a variance was denied. Although it appears it was in part denied because Plaintiffs failed to submit a brief for their appeal, the decision on this variance is nonetheless a final determination. *Id.*; *Braun,* 2008 U.S. App. LEXIS 5344, at *6-11.

The status of Plaintiffs' site plan is more complex. The site plan must meet the standards articulated in § 10.03K for Yard Waste. Defendant's expert Paul LeBlanc states in his affidavit that, "[w]hile the Ordinance also requires site plan approval and specific standards are applicable to that process, as well*, formal action on the site plan became moot when the variance requests were denied* and the applicant did not submit revised plans to meet the requirements of the ordinance." Def.'s Mot. Summ. J., Ex. 57 ¶ 15. Although Plaintiffs' site plan was never formally denied by Defendant, it is clear Plaintiffs site plan could not practically meet the requirements of the ordinance without a variance. Thus, the denial of a variance foreclosed the acceptance of the site plan, making additional submissions futile. *Seguin*, 968 F.2d at 589; *Bannum,* 958 F.2d at 1362-1363. Plaintiffs' as-applied equal protection claim as to the denial of the variance from the composting standards, and Defendant's rejection of their site plan application are ripe.

However, it is clear that Defendant has not made a final decision to approve or disapprove Plaintiffs' special land use application. *See Sprint*, 361 F.3d at 1004

(defendant "merely map[s] a procedural route that [the plaintiff] must take in order to proceed with its project.").  As previously discussed, the special land use request is distinct from site plan approval and compliance with the commercial composting requirements of § 10.03.  As far as the Court is aware, Plaintiffs have not challenged the zoning ordinance's application to Rondigo in connection with the Blue Star property.

Even if the finality requirement was met, Plaintiffs must then prove that Defendant undertook the challenged action with a discriminatory purpose, which requires proof that the defendant acted at least in part because of the gender of Rondigo's owner.  *Barnes Found. v. Township of Lower Merion*, 982 F. Supp. 970, 984 (E.D. Pa. 1997), *rev'd on other grounds*, 242 F.3d 151 (3d Cir. 2001) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252 (1977)).  The crucial inquiry under the Equal Protection Clause is whether the Defendant treated Rondigo differently than it treated similarly situated institutions not governed by women, and if they did, whether the Defendant did so specifically because of Michaels' gender.  *See Barnes*, 982 F. Supp. at 985.

Plaintiffs provide no direct or circumstantial evidence of gender discrimination aside from the differential treatment of the two composting operations.  Indeed, all Plaintiffs offer is the fact that the Indian Summer composting operation, owned by a man, is treated differently.

The Township says it exercised legitimate zoning authority and treated the Indian Summer operation differently because it is a non-conforming use that pre-dated the Township's promulgation of composting standards.  As explained in *Barnes*:

> Because the Defendant['s] challenged actions here are explainable on grounds other than [gender], namely that they were undertaken to achieve the Defendant['s] asserted objectives of preserving the health, safety, and welfare of the residential neighborhood in which [Rondigo] is located, [or because Indian Summer is a non-conforming use], it is not enough for the [Plaintiffs] simply to show that it was treated differently than similarly situated institutions that are not governed by [women]. Rather, the [Plaintiffs] must adduce additional direct or circumstantial evidence from which a gender-based discriminatory purpose can be inferred.

*Id.* at 985. Plaintiffs fail to provide evidence that the alleged disparate treatment was "because" of gender. *Id.* at 982-985.

In addition, even if it could provide such evidence, the two composting operations, although engaged in composting within the same geographic area, are not similarly situated. To be considered similarly situated, the parties must be similar in all relevant aspects. *See Glenn*, 2006 U.S. Dist. LEXIS 51461, at *42-43 (citing *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455-456 (7th Cir. 2004)). Not only is the Indian Summer facility a non-conforming use with a vested property right in its non-conforming use, it is also subject to a 1993 consent decree entered into with the Township. *See Bevan v. Brando Township*, 475 N.W.2d 37, 45-46 (Mich. 1991). Plaintiffs equal protection gender discrimination claim fails.

### iii)    As Applied There is a Rational Basis

Absent the existence of discrimination because of a fundamental right or protected class, Plaintiffs must demonstrate that the Township's actions were not rational, and/or were arbitrary and capricious, such that there was governmental action

that could not rationally relate to legitimate governmental objectives. *Sprint*, 361 F.3d at 1002; *Willowbrook v. Olech*, 528 U.S. 562, 565 (2000). "Rational basis scrutiny is a daunting standard." *Glenn*, 2006 U.S. Dist. LEXIS 51461, at *41. Indeed, government action will be deemed rational "if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification." *Id.* (emphasis added) (quoting *FCC v. Beach Commc'n, Inc.*, 508 U.S. 307, 313 (1993)); *Concrete*, 442 F.3d at 171. All of Defendant's actions survive rational basis scrutiny. *See Glenn*, 2006 U.S. Dist. LEXIS 51461, at *38-40.

Even if Defendant's actions were deemed irrational, Rondigo and Indian Summer are not similarly situated. *Id.* at *42-43 (citing *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th Cir. 2004)).

This equal protection claim fails as well, and Plaintiffs' claim under 42 U.S.C. § 1983 for violation of equal protection fails in its entirety.

**D.    First Amendment**

A constitutional retaliation claim has three elements:

(1) the plaintiff engaged in protected conduct;

(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, to meet the third element, "Plaintiff[s] must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037-1038 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Plaintiffs can meet their prima facie burden using "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similar individuals." *Peck v. Oakland County*, No. 07-10167, 2008 U.S. Dist. LEXIS 11693, at *21 (E.D. Mich. Feb. 15, 2008) (quoting *Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002)). However, "if the plaintiff meets this burden, the burden of production shifts to the defendant, but if the defendant can show he would have taken the same action in the absence of the protected activity, he is entitled to summary judgment." *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008) (internal citation omitted) (citing *Thaddeus-X*, 175 F.3d at 399).

Plaintiffs do not clearly articulate their protected First Amendment activity. In their response they appear to state their protected activity was seeking redress from this Court, which they did by filing a complaint on Dec. 16, 2005. They allege the Township retaliated against Plaintiffs by: (1) instituting an injunction in Court enjoining Plaintiffs from initiating composting activities; and (2) re-activating litigation related to an injunction on the Blue Star property.

The Township initiated an action for an injunction before Plaintiffs filed suit here, which was on December 16, 2005. The Circuit Court for the County of St. Clair, entered a consent order resolving the Township's motion for a temporary restraining order on April 1, 2005. Plaintiffs do not clearly state any other protected First Amendment activity which the Township retaliated against  by filing a temporary restraining order

against them.

Furthermore, Plaintiffs do not cite evidence supporting the proposition that their lawsuit was a substantial or motivating factor in the renewed Blue Star Property litigation. Plaintiffs do not even state the date of the alleged retaliatory proceedings against the Blue Star property. In addition, Plaintiffs have not supplied any evidence showing that the litigation between Defendant and Desjardines created substantial obligations not already required by the August 27, 2001 injunction on the property. Absent additional obligations (let alone evidence thereof) Plaintiffs cannot maintain Defendant took an adverse action against them that would deter a person of ordinary firmness from continuing to engage in that conduct, as the obligations would be the same as those previously running with the land. Although the standard for the second element is an objective one, the Court also notes that the alleged retaliatory litigation failed to actually dissuade Plaintiffs from pursuing their lawsuit.

In summary, Defendant's motion is granted on Plaintiffs' claim under 42 U.S.C. § 1983 for a violation of its First Amendment rights.

**E.     Plaintiffs Waived Counts V, VI, and VII**

Plaintiffs' complaint alleges fraudulent misrepresentations, negligent misrepresentations, and silent fraud. Defendant addressed these claims in its Motion for Summary Judgment. Plaintiffs failed to address defense arguments in both their initial and supplemental responses. These claims are waived.

## IV.    CONCLUSION

The Court **GRANTS** Defendant's motion in its entirety.

**IT IS ORDERED**.

      /s/ Victoria A. Roberts

Victoria A. Roberts

United States District Judge

Dated:  March 28, 2008

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 28, 2008. |
| --- |
| s/Linda Vertriest |
| Deputy Clerk |